UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | Cr. No. 22-10279-AK |
| ) | |
| 7.   MARIANO SANTANA, ) | |
|      Defendant ) | |

SENTENCING MEMORANDUM OF THE UNITED STATES

On August 31, 2023, MARIANO SANTANA ("defendant") pleaded guilty to money laundering conspiracy, in violation of Title 18, United States Code, Section 1956(h). The final version of the Pre-Sentence Report prepared by the United States Probation Office, dated November 16, 2023 ("PSR"), found that SANTANA's total offense level ("TOL") was 13, his criminal history category ("CHC") was II, and his guideline sentencing range ("GSR") was 15-21 months. PSR, ¶¶ 31, 54, 113. For reasons to be discussed in greater detail at SANTANA's sentencing hearing, the government requests that this Court sentence SANTANA to 18 months in prison, a sentence within the applicable GSR, and three years of supervised release.

During a two-year investigation, the Federal Bureau of Investigation (FBI) identified a significant criminal organization that laundered large sums of money for various criminal groups. Agents first detected the network in greater Boston and eventually identified the leader of the organization, JIN HUA ZHANG, based in Staten Island, New York, and a number of his criminal associates. The investigation revealed that, for a fee, ZHANG laundered bulk cash for drug dealers and laundered profits from other illegal businesses. After ZHANG obtained bulk cash or other illegal funds, ZHANG took a fee and then sought to convert the funds into cryptocurrency (to do this, ZHANG worked with individuals he believed were fellow money launderers who were, in fact, FBI undercover agents). Once ZHANG had an equivalent amount of cryptocurrency minus

his fee, the cryptocurrency was sent by ZHANG to ZHANG's clients. The superseding indictment describes a massive money laundering operation. In less than one year, ZHANG and his associates laundered at least $25 million worth of drug proceeds and funds from other illegal businesses through the FBI undercover agents. Agents traced funds from the ZHANG organization to Hong Kong and elsewhere in China, India, Cambodia, and Brazil, and seized cash and cryptocurrency in accounts tied to ZHANG.

The parties are in substantial agreement about a number of aspects of this case. First, the parties agree that SANTANA's role in the conspiracy was limited. On two occasions in June 2022, SANTANA met an FBI cooperating witness in a parking lot and delivered a total of just under $60,000 in cash to him. On both occasions, the FBI cooperating witness sent a message to ZHANG over an encrypted messaging application that the bulk cash had been dropped off. ZHANG caused the funds to be converted into cryptocurrency while keeping a fee and then sent the cryptocurrency back to his clients.

Second, the parties agree that SANTANA's criminal history and personal characteristics place him at the low end of culpability in this conspiracy. SANTANA is 55 years old, with no high school diploma, a significant substance abuse history, and other significant mental health challenges. PSR, ¶¶ 98, 100-104. Nearly all of his criminal convictions relate to his substance abuse history and led to probation, suspended sentences, or short jail terms. These include multiple convictions for possession of heroin, PSR, ¶¶ 35, 38, 39, 42, 44, 46; possession with intent to distribute or possession of cocaine, PSR, ¶¶ 36, 43; possession of Class E substances, PSR, ¶¶ 45, 49; and theft or vehicle offenses. SANTANA's longest prison sentence was also the only scorable offense in the PSR, a 2008 probation violation for knowingly receiving stolen property which led

to SANTANA serving 18 months in prison. PSR, ¶¶ 50. With all these factors in mind, a sentence within the modest guideline range of 15-21 months called for in the PSR is appropriate.[1]

For that reason, the Court should reject SANTANA's attempt to further lower the GSR by finding he played a minor role in the offense (Defendant's Sentencing Memorandum, ECF No. 210, at pp. 6-7). To qualify for this reduction, the defendant must demonstrate that he is less culpable that most of those involved in the offense of conviction and that he is less culpable than most of those who have perpetuated similar crimes. United States v. Gomez-Encarnacion, 885 F.3d 52, 56-57 (1st Cir. 2018), citing United States v. Mateo-Espejo, 426 F.3d 508, 512 (1st Cir. 2005). SANTANA cannot make that showing. SANTANA dropped off large bags of cash to an FBI cooperating witness to be laundered – not once, but twice. The fact that ZHANG and other members of the conspiracy engaged in different types and larger amounts of money laundering

---

[1] This is not the same thing as saying that Probation correctly calculated SANTANA's GSR in this case. Probation really should have applied a six-level enhancement pursuant to USSG § 2S1.1(b)(1) because the record sufficiently showed that SANTANA was aware that the funds he dropped off were proceeds of drug trafficking. See PSR, ¶ 22. Agents recorded conversations with ZHANG where he stated that some of the funds he laundered were proceeds of cocaine and marijuana trafficking. Before SANTANA dropped off bulk cash to be laundered, a ZHANG employee used an encrypted application to direct the FBI CW to provide a photograph of a dollar bill and bring that dollar bill to the cash delivery, so that the person dropping off the bulk cash could verify he was delivering the funds to the right recipient. When SANTANA arrived at the meeting location, SANTANA asked the FBI CW for the dollar bill that had been previously photographed. The FBI CW provided the dollar bill to SANTANA and SANTANA then delivered the bag of cash to the FBI CW. Agents have seen this system of using a dollar bill as a token to identify criminal co-conspirators employed in numerous drug trafficking and money laundering investigations. While SANTANA's criminal record is far from the most serious seen in this courthouse, it is comprised almost entirely of drug possession and distribution offenses (think of how many times SANTANA must have purchased drugs, dealt drugs, and consumed drugs to rack up ten drug-related convictions). With his record, it is not difficult to see how SANTANA would have come into contact with drug traffickers who need their money laundered. While that evidence should be more than enough to secure the application of the enhancement, agents recorded another co-defendant similarly engaged in dropping off bulk cash shipments, THONG NGUYEN, where he expressly stated that the money came from drug trafficking. NGUYEN just made explicit what should otherwise have been obvious. Given this record, it is a bit much for SANTANA to suggest that he had no idea the funds he dropped off were drug proceeds.

may expose them to harsher criminal penalties but does not make their conduct fundamentally different than SANTANA's. Like ZHANG, SANTANA engaged in money laundering acts that fall within the heartland of criminal conduct prohibited by the statute. See, e.g., United States v. Ortiz-Santiago, 211 F.3d 146 (1st Cir. 2000) (court denied minor role where defendant performed "menial tasks" like unloading drugs and surveillance); United States v Gonzalez-Soberal, 109 F.3d 64 (1st Cir. 1997) (no minor role where defendant alleged he had only been a courier).

In light of the nature of SANTANA's offense and more importantly his personal characteristics, the GSR calculated by Probation sufficiently captures the sentencing factors most in play in this case: the seriousness of the offense, the need to promote respect for the law, and the need to specifically deter SANTANA. Given the modest nature of the range and SANTANA's criminal record, a mid-range sentence of 18 months in prison is sufficient but not greater than necessary to achieve these sentencing goals. Finally, given SANTANA's substantial history of substance abuse, the government requests that the Court impose a full term of three years of supervised release in his case.

Wherefore, the government respectfully requests that this Court sentence MARIANO SANTANA to 18 months in prison and three years of supervised release.

                                        Respectfully submitted,

                                        JOSHUA S. LEVY
                                        Acting United States Attorney

By:    /s/ Christopher Pohl
          Christopher Pohl
          Brian A. Fogerty
          Meghan C. Cleary
          Assistant U.S. Attorneys

5

CERTIFICATE OF SERVICE

      I, the undersigned, hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) on December 10, 2023.

      /s/ Christopher Pohl
      Christopher Pohl
      Assistant U.S. Attorney